UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-23556-BLOOM/OTAZO-REYES

ORLANDO N. MONZON CEJAS,

      Plaintiff,

vs.

DOWNRITE ENGINGEERING CORP.,

      Defendant.

_____/

**PROPOSED *AMENDED* JURY INSTRUCTIONS**

Formatted: Font: Italic

1

**1.1**
**General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

<u>What is evidence</u>:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

2

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he thinks the rules of evidence don't permit it. If

3

I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

· the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

· the witness's memory;

· the witness's manner while testifying;

· any interest the witness has in the outcome of the case;

4

· any bias or prejudice the witness may have;

· any other evidence that contradicts the witness's testimony;

· the reasonableness of the witness's testimony in light of all the evidence; and

· any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Mr. Monzon, claims the Defendant, Downrite, <u>interfered with his rights under the FMLA by not providing information about</u> <u>his right to take FMLA leave, and by terminating his employment instead.</u> Downrite denies those claims and contends that *1) the Plaintiff has failed to allege any fact that, if true, would violate any particular section of the FMLA or the implementing regulations of 29 CFR Part 825, 2) that at all times material hereto, Downrite was in compliance with all requirements of the FMLA and 29 CFR Part 825, 3) that Downrite satisfied the notice requirements of section 825.300 by prominently posting the required notice at its principal place of business and by including the required notice its Safety and Employee Policy Manual, 4) that the inclusion of the notice in its Safety and Employee Policy Manual is deemed to constitute actual notice to the Plaintiff under*

5

*sections 825.302 and 825.303 which require that Plaintiff have provided Downrite with "at least verbal notice sufficient to make Downrite aware that Plaintiff need(ed) FMLA leave and the timing and duration of the leave" and that Plaintiff was required to provide this notice to Downrite at least 30 days in advance of FMLA beginning if foreseeable or as soon as practicable depending on the facts and circumstances, 5) that Plaintiff did not comply with the notice requirements and Downrite's FMLA policy on or about April 12, 2021 when he allegedly "requested time off to take care of his father" and thus Plaintiff did not establish entitlement to FMLA-protected leave and that Plaintiff did not at any time prior or subsequent to April 12, 2021, provide Downrite with "at least verbal notice sufficient to make Downrite aware that Plaintiff need(ed) FMLA-qualifying leave and the anticipated timing and duration of the leave", see 825.302(c), 6) that Plaintiffs conduct in the days subsequent to his final day of work manifested an unequivocal notice of intent not to return to work and thus Downrite's obligation under the FMLA ceased. Plaintiff severed all communications with his supervisor and the company by not responding to communication attempts from his supervisor in the days after his final day of work and did not contact the. Plaintiff did not contact his supervisor or the human resource department with an explanation for his absence, the number of days he expected to be absent and date by which he could be expected back to*

6

*work. Plaintiff did not at any time subsequent to his final day of work physically present himself to any of Downrite's worksites or the corporate office seeking to return to work. 7) that Downrite did not take any action against Plaintiff which would constitute "termination". Subsequent to Plaintiff's failure to appear at work on or about April 12, 2021, Downrite actively sought to communicate with Plaintiff to determine the reason for his absence and when he would be coming back to work. Plaintiff failed to respond to these attempts and failed to initiate communication with Downrite, 8) that as early as November 2020, Plaintiff requested and was granted unpaid leave on a number of occasions where he provided his supervisor advance notice and no such request was ever denied, 9) that Downrite has not taken any action against Plaintiff which may have harmed his reputation or caused him to suffer mental anguish or emotional distress, 10) that Plaintiff failed to mitigate his damages by failing to contact his supervisor or the human resources department to provide "at least verbal notice sufficient to make Downrite aware that Plaintiff need(ed) FMLA-qualifying leave and the anticipated timing and duration of the leave" and 11) that Plaintiffs claim for damages should be offset by amounts he earned or could have earned subsequent to April 12, 2021.*

Burden of proof:

7

Mr. Monzon has the burden of proving his case by what the law calls a "preponderance of the evidence." That means Mr. Monzon must prove that, in light of all the evidence, what he claims is more likely true than not. So, if you could put the evidence favoring Mr. Monzon and the evidence favoring Downrite on opposite sides of balancing scales, Mr. Monzon needs to make the scales tip to his side. If Mr. Monzon fails to meet this burden, you must find in favor of Downrite.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Downrite has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Downrite must prove for any affirmative defense. After considering all the evidence, if you decide that Downrite has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

9

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Mr. Monzon will present his witnesses and ask them questions. After Mr. Monzon questions the witness, Downrite may ask the witness questions – this is called "cross-examining" the witness. Then Downrite will present its witnesses, and Mr. Monzon may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

11

**1.4 Jury Questions**

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

12

Here are several important things to keep in mind about your questions

for the witnesses:

· First, you must submit all questions in writing. Please don't ask
  any questions aloud.

· Second, the court can't re-call witnesses to the stand for
  additional juror questions. If you have a question for a particular
  witness, you must submit it when I ask.

· Finally, because you should remain neutral and open-minded
  throughout the trial, you should phrase your questions in a way
  that doesn't express an opinion about the case or a witness. You
  must keep an open mind until you've heard all the evidence, the
  closing arguments, and my final instructions on the law.

13

**1.5 Interim Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

14

**1.10 TAKING NOTES**

**DUPLICATIVE – SEE P 10**

  **If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you from being attentive. When you leave court for recesses, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.**

  **Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.**

15

**2.1 Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**2.2 Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

**2.6 Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

### 3.2.2 The Duty to Follow Instructions – Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

19

### 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

20

**3.4 Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

22

**3.5.2 Impeachment of Witnesses Because of Inconsistent Statements
     or Felony Conviction**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

<u>**ANNOTATIONS AND COMMENTS**</u>

No annotations associated with this instruction.

23

### 3.7.1 Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the Mr. Monzon to prove every essential part of his claim[s] by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Mr. Monzon [party making that claim or contention].

[When more than one claim is involved, you should consider each claim separately.]

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of [the Plaintiff's] [a party's] claim[s] by a preponderance of the evidence, you should find for Downrite as to that claim.

**ANNOTATIONS AND COMMENTS**

24

No annotations associated with this instruction.

**3.7.2 Responsibility for Proof – Affirmative Defense**
     **Preponderance of the Evidence**

   In this case, Downrite asserts the affirmative defense[s] of *1) the Plaintiff has failed to allege any fact that, if true, would violate any particular section of the FMLA or the implementing regulations of 29 CFR Part 825, 2) that at all times material hereto, Downrite was in compliance with all requirements of the FMLA and 29 CFR Part 825, 3) that Downrite satisfied the notice requirements of section 825.300 by prominently posting the required notice at its principal place of business and by including the required notice its Safety and Employee Policy Manual, 4) that the inclusion of the notice in its Safety and Employee Policy Manual is deemed to constitute actual notice to the Plaintiff under sections 825.302 and 825.303 which require that Plaintiff have provided Downrite with "at least verbal notice sufficient to make Downrite aware that Plaintiff need(ed) FMLA leave and the timing and duration of the leave" and that Plaintiff was required to provide this notice to Downrite at least 30 days in advance of FMLA beginning if foreseeable or as soon as practicable depending on the facts and circumstances, 5) that Plaintiff did not comply with the notice requirements and Downrite's FMLA policy on or about April 12, 2021 when he allegedly "requested time off to take care of his father" and thus Plaintiff did not establish entitlement to FMLA-protected leave and that Plaintiff did not at any time prior or subsequent to April 12, 2021, provide Downrite with "at least*

26

*verbal notice sufficient to make Downrite aware that Plaintiff need(ed) FMLA-qualifying leave and the anticipated timing and duration of the leave", see 825.302(c), 6) that Plaintiffs conduct in the days subsequent to his final day of work manifested an unequivocal notice of intent not to return to work and thus Downrite's obligation under the FMLA ceased. Plaintiff severed all communications with his supervisor and the company by not responding to communication attempts from his supervisor in the days after his final day of work and did not contact the. Plaintiff did not contact his supervisor or the human resource department with an explanation for his absence, the number of days he expected to be absent and date by which he could be expected back to work. Plaintiff did not at any time subsequent to his final day of work physically present himself to any of Downrite's worksites or the corporate office seeking to return to work. 7) that Downrite did not take any action against Plaintiff which would constitute "termination". Subsequent to Plaintiff's failure to appear at work on or about April 12, 2021, Downrite actively sought to communicate with Plaintiff to determine the reason for his absence and when he would be coming back to work. Plaintiff failed to respond to these attempts and failed to initiate communication with Downrite, 8) that as early as November 2020, Plaintiff requested and was granted unpaid leave on a number of occasions where he provided his supervisor advance notice and no such*

27

*request was ever denied, 9) that Downrite has not taken any action against Plaintiff which may have harmed his reputation or caused him to suffer mental anguish or emotional distress, 10) that Plaintiff failed to mitigate his damages by failing to contact his supervisor or the human resources department to provide "at least verbal notice sufficient to make Downrite aware that Plaintiff need(ed) FMLA-qualifying leave and the anticipated timing and duration of the leave" and 11) that Plaintiffs claim for damages should be offset by amounts he earned or could have earned subsequent to April 12, 2021.*

Even if Mr. Monzon proves his claim[s] by a preponderance of the evidence, Downrite can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

[When more than one affirmative defense is involved, you should consider each one separately.]

I caution you that Downrite does not have to disprove Mr. Monzon's claim[s], but if Downrite raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

28

**4.16 Family and Medical Leave Act – Interference Claims –**
**(NEW) – 29 U.S.C. §§ 2601-2654**

In this case, Mr. Monzon claims that he was entitled to a leave of absence from work under a federal law called the Family and Medical Leave Act, also known as the FMLA, and that Downrite interfered with, restrained, or denied his entitlement to a leave of absence.

Under the FMLA, an eligible employee may take up to 12 weeks of leave during any 12-month period for the care of a parent who has a serious health condition. This leave is called FMLA leave.

The FMLA also gives the employee, after his leave, the right to be restored by the employer to the position held when the leave began, or to be given an equivalent position. It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise any of these rights.

To succeed on his claim against Downrite, Mr. Monzon must prove each of the following facts by a preponderance of the evidence:

First:   Mr. Monzon was eligible for FMLA leave;

Second:  Mr. Monzon was entitled to FMLA leave;

Third:   Mr. Monzon gave Downrite proper notice of his need for leave; and

Fourth:  Downrite did not notify Mr. Monzon of his FMLA eligibility.

[In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.]

For the first element, Mr. Monzon was "eligible" for FMLA leave if:

(a) Mr. Monzon worked for Downrite for at least 12 months before the date any FMLA leave was to begin, and

(b) Mr. Monzon worked for Downrite for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

For the second element, Mr. Monzon was "entitled" to FMLA leave if he had an FMLA-qualifying reason. The care of a parent who has a serious health condition is a "FMLA-qualifying reason."

A "serious health condition" is an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical facility, or continuing treatment by a healthcare provider. Ordinarily, unless complications arise, the common cold, the flu, earaches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, and other similar conditions do not meet the definition of a "serious health condition" and do not qualify for FMLA leave.

For the third element, Mr. Monzon "gave proper notice" to Downrite of his need for FMLA leave if he notified Downrite of the need to take FMLA leave in a timely manner and in a way that alerted Downrite that his absence

might qualify as FMLA leave – even if Mr. Monzon did not expressly mention the FMLA.

If Mr. Monzon knew of the need for leave more than 30 days before the leave was to begin, he was required to give Downrite notice at least 30 days before the leave was to begin. If Mr. Monzon knew of the need for leave less than 30 days before the leave was to begin, he was required to give Downrite notice as soon as was reasonably possible.

For the fourth element, you must determine whether Downrite failed to notify Mr. Monzon of his FMLA eligibility.

[**Including Affirmative Defenses:** If you find that Mr. Monzon has proved each element he must prove, you must decide whether Downrite has established any of its affirmative defenses.

If you find that Downrite established its affirmative defenses, you will not decide the issue of Mr. Monzon's damages. But if you find that Downrite has not established its affirmative defense, you must decide the damages issue.

The measure of damages for Mr. Monzon is either lost wages and benefits or other expenses incurred because of Downrite's FMLA violation. Mr. Monzon can recover lost wages and benefits, or he can recover other expenses incurred because of Downrite's actions – but not both.]

31

If Mr. Monzon proved that he lost wages or benefits because of Downrite's FMLA violation, then Mr. Monzon may recover net lost wages and benefits from the date of his termination, April 12, 2021, to the date of your verdict.

If you find that Mr. Monzon did not directly lose pay or benefits because of Downrite's FMLA violation, then you may award Mr. Monzon the actual monetary loss that directly resulted from Downrite's FMLA violation. This amount of damages cannot exceed [12/26] weeks of Mr. Monzon's wages or salary.

[**Mitigation of Damages:** You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of Monzon's claim for lost pay, the duty to mitigate damages requires Mr. Monzon to be reasonably diligent in seeking substantially equivalent employment to the position he held with Downrite. To prove that Mr. Monzon failed to mitigate damages, Downrite must prove by a preponderance of the evidence that: (1) work comparable to the position Mr. Monzon held with Downrite was available, and (2) Mr. Monzon did not make reasonably diligent efforts to obtain it. If, however, Downrite shows that Mr. Monzon did not make reasonable efforts to obtain any work, then Downrite does not have to prove that comparable work was available.

32

If you find that Downrite proved by a preponderance of the evidence that Mr. Monzon failed to mitigate damages, then you should reduce the amount of Mr. Monzon's damages by the amount that could have been reasonably realized if Mr. Monzon had taken advantage of an opportunity for substantially equivalent employment.]

### ANNOTATIONS AND COMMENTS

#### I. Cause of Action

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, provides for several causes of action, including an interference claim, in which an employee asserts that his employer denied or otherwise interfered with his rights under the FMLA, and a retaliation claim, in which an employee asserts that his employer took an adverse employment action against him because he took an action protected by the FMLA.

Pattern Instruction 4.16 is intended to be used for FMLA interference claims. Pattern Instruction 4.16 is not intended to be used for FMLA retaliation cases; for such claims, please refer to Pattern Instruction 4.15., *supra*. If a plaintiff brings alternative claims for FMLA interference and FMLA retaliation based on the same adverse employment action, Pattern Instructions 4.15 and 4.16 may be merged, though the court should be careful to explain the different causation standards and should be aware of the differences in the availability of a causation affirmative defense. For a discussion of the causation standards and affirmative defense availability, please see annotation § II(H) to Pattern Instruction 4.15, *supra*, and annotation § III(B) to Pattern Instruction 4.16, *infra*.

#### II. Distinction Between FMLA Interference and FMLA Retaliation Claims

To state an interference claim, the employee must show that his employer interfered with or denied him an FMLA benefit to which he was entitled. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000). The employee "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1208 (11th Cir. 2001). In contrast, an FMLA retaliation plaintiff must prove that his employer retaliated against him because he engaged in activity protected by the FMLA. *See Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1309-10 (11th

Cir. 2011) (per curiam) (noting that an FMLA retaliation plaintiff has an increased burden of proving causal nexus that an interference plaintiff does not have).

### III. Elements and Defenses

#### A. Elements Common to Interference and Retaliation Claims

To prevail on an FMLA interference claim or an FMLA retaliation claim, the plaintiff must be eligible for FMLA leave, be entitled for FMLA leave, and give the employer proper notice of the need for FMLA leave. For a discussion of these elements, please see the annotations and comments following Pattern Instruction 4.15, *supra*.

A "pre-eligible" employee may state an interference claim based on interference with "post-eligibility" FMLA leave. *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) (holding that "a pre-eligible employee has a cause of action if an employer terminates her in order to avoid having to accommodate that employee with rightful FMLA leave rights once that employee becomes eligible").

#### B. "Lack of Causation" Affirmative Defense

To prove an FMLA interference claim, a plaintiff does not have to prove a "causal nexus" between the FMLA leave and the employer's action. *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1309-10 (11th Cir. 2011). Rather, the plaintiff must prove "that he was denied a benefit to which he was entitled under the FMLA." *Id*. at 1309. "[T]he causal nexus element is the "increased burden" that a retaliation plaintiff faces that an interference plaintiff does not." *Id*. at 1310. Eleventh Circuit "cases make clear that a causal nexus is not an element of an interference claim, but that the employer can raise the lack of causation as an affirmative defense." *Id*. at 1310. Therefore, if the employee alleges that the employer interfered with the employee's FMLA rights, the employer may prevail if it shows that the employer would have taken the same action – such as refusing to reinstate the employee following FMLA leave – even if the employee had not taken FMLA leave. *Id.; accord Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010); *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1208 (11th Cir. 2001) ("[I]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable.").

### IV. Remedies

For a discussion of the remedies available to a plaintiff who prevails on an FMLA claim, please see the annotations and comments following Pattern Instruction 4.15, *supra*.

**Plaintiff's Proposed Special Jury Instruction**

**FMLA Interference – Fourth Element: Failure to Notify Employee of FMLA Eligibility**

      Once an employee requests FMLA leave or provides information sufficient to alert an employer that the leave could be "for an FMLA-qualifying reason," the employer must notify the employee of the employee's eligibility to take FMLA leave within five (5) business days. Failure to notify the employee constitutes interference with the employee's FMLA rights if the employee shows he/she was harmed by the employer's failure to notify. An employee can show this harm if he/she was terminated rather than being provided FMLA leave.

      Mr. Monzon is suing Downrite for interfering with his FMLA rights by failing to notify him of his eligibility to take FMLA leave. Therefore, the fourth element of Mr. Monzon's FLMA interference claim is satisfied if he shows he was harmed by Downrite's failure to notify him of his FMLA eligibility.

*See* 29 C.F.R. § 825.300(b)(1); 29 C.F.R. § 825.300(c); *Hernandez v. King Ocean Servs. Ltd. (Cayman Islands) Inc.*, No. 20-24632-CIV, 2022 WL 2578652, at *7 (S.D. Fla. July 6, 2022).

35

**Plaintiff's Proposed Special Jury Instruction**

**Formatted:** Font: Bold

**FMLA Interference – Fourth Element: Failure to Provide Employee Written Notice Detailing Rights and Responsibilities**

An employer must also provide an employee with written notice detailing the specific expectations and obligations of the employee, and explaining the consequences of a failure to meet the obligations.

An example of the written notice is available online for employers to download and use from the United States Department of Labor website.

The employer must provide the written notice at the same time it provides notice of the employee's eligibility to take FMLA leave, which is within five (5) business days after the employees provides information sufficient to alert the employer the leave is needed for an "FMLA-qualifying reason."

Amongst other things, the written notice must inform the employee of the following items:

- The leave may count against the employee's annual FMLA entitlement;

- **The employee's requirement to provide certification of the FMLA – qualifying reason, and the consequences of failing to do so;**

- **The employee's right to take paid leave instead of FMLA leave.**

**Failure to provide written notice to the employee constitutes interference with the employee's FMLA rights if the employee shows he/she was harmed by the employer's failure to provide written notice. An employee can show this harm if he/she was terminated rather than being provided FMLA leave.**

**Mr. Monzon is suing Downrite for interfering with his FMLA rights by failing to provide him with written notice of his rights and responsibilities once he takes FMLA leave. Therefore, the fourth element of Mr. Monzon's FLMA interference claim is satisfied if he shows he was harmed by Downrite's failure to provide him with written notice of his rights and responsibilities.**

*See* 29 C.F.R. § 825.300(c); 29 C.F.R. § 825.300(e); *Wanner v. Under Armour, Inc.*, No. 3:18-CV-00767, 2020 WL 7489464, at *7 (M.D. Tenn. Dec. 21, 2020); *Rodriguez v. Sch. Bd. of Hillsborough Cnty.*, Fla., 60 F. Supp. 3d 1273, 1279 (M.D. Fla. 2014),

**Plaintiff's Proposed Special Jury Instruction**

**FMLA Interference – Third Element: Employee's Verbal Notice is Sufficient**

     **An employee must provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.**

**29 C.F.R. § 825.302(c).**

38

**Plaintiff's Proposed Special Jury Instruction**

**FMLA Interference – Third Element: Foreseeability**

You were previously instructed that an employee must provide at least 30 days advance notice before FMLA leave is to begin if the need for leave is foreseeable. However, the employee does not have to provide 30 days advance notice if it is not practicable to do so. For example, if the employee does not know when leave will be required to begin or there is a medical emergency.

The employee must provide notice as soon as practicable, meaning as soon as both possible and practical taking into account all of the facts and circumstances.

An employee only has to give notice one time regardless of whether the leave is to be taken on a continuous basis, an intermittent basis, or on a reduced schedule basis.

An employee's right to intermittent leave to care for a family member with a serious health condition applies not only when the family member has an intermittent need, but also where the employee is only needed intermittently – such as where other care is normally available or

39

**where care responsibilities are shared with another member of the family**
**or a third party.**

**29 C.F.R. § 825.302(a)&(b);** 29 C.F.R. § 825.124(c).

Deleted: ,

**Plaintiff's Proposed Special Jury Instruction**

**FMLA Damages — Other Monetary Damages**

The Family and Medical Leave Act provides that if an employee is unable to prove that the employer's violation of the Act caused the employee to lose any wages, benefits or other compensation, then that employee may recover other monetary losses sustained as a direct result of the employer's violation of the Act.

So in this case, if you find that Downrite has violated Mr. Monzon's rights under the Act, and yet you also find that Mr. Monzon has not proved the loss of any wages, benefits or other compensation as a result of this violation, then you must determine whether Mr. Monzon has suffered any other monetary losses as a direct result of the violation. [Other monetary losses may include the cost of providing the care that gave rise to the need for a leave.] Mr. Monzon has the burden of proving these monetary losses by a preponderance of the evidence.

Under the law, Mr.Monzon's recovery for these other monetary damages can be no higher than the amount that he would have made in wages or salary for a [twelve-week period]29 during his employment. So you must limit your award for these other monetary damages, if any, to that amount. You must also remember that if Mr. Monzon has proved damages for lost wages, benefits or

other compensation, then you must award those damages only and Mr. Monzon may not recover any amount for any other monetary damages suffered as a result of Downrite's failure to notify him of his FMLA eligibility.

Finally, the Family and Medical Leave Act does not allow Mr. Monzon to recover for any mental or emotional distress or pain and suffering that may have been caused by Downrite's violation of the Act. So I instruct you that you are not to award Mr. Monzon any damages for emotional distress or pain and suffering.

[In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.]

Comments

The Family and Medical Leave Act provides that "in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee [can be recovered by a plaintiff]." 29 U.S.C. § 2617(a). An award for these non-wage-related monetary losses is contingent upon the plaintiff's not obtaining an award for lost wages. This instruction therefore provides that the jury is to reach the question of monetary losses other than lost wages only if it finds that the plaintiff has not proven damages for lost wages.

42

The FMLA does not provide for recovery for emotional distress or pain and suffering. Lloyd v. Wyoming Valley Health Care Sys., 994 F. Supp. 288, 291 (M.D. Pa. 1998) (reasoning that "the statute itself by including 'actual monetary compensation' as a separate item of damage places a limited definition on 'other compensation'"; concluding that "the plain meaning of the statute is that 'other compensation' means things which arise as a quid pro quo in the employment arrangement, and not damages such as emotional distress which are traditionally an item of compensatory damages"). See also Coleman v. Potomac Electric Power Co., 281 F. Supp.2d 250, 254 (D.D.C. 2003) :

Recovery under FMLA is "unambiguously limited to actual monetary losses." Walker v. United Parcel Service, Inc., 240 F.3d 1268, 1277 (10th Cir. 2001). Other kinds of damages - punitive damages, nominal damages, or damages for emotional distress - are not recoverable. See Settle v. S.W. Rodgers Co., Inc., 998 F. Supp. 657, 665-66 (E.D. Va. 1998)(punitive damages and damages for emotional distress); Keene v. Rinaldi, 127 F. Supp. 2d 770, 772-73 & n.1 (M.D.N.C. 2000), aff'd, adopted 127 F. Supp. 2d 770 (M.D.N.C. 2000)(same).


In accordance with 29 U.S.C. § 2617(a), the court must double the amount of any damages under the FMLA, as liquidated damages, unless the defendant persuades the court that the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of the FMLA— in which case the court has the discretion to limit the award to the amount of damages found by the jury.

Attorney Fees and Costs

There appears to be no uniform practice regarding the use of an instruction that warns the jury against speculation on attorney fees and costs.  In Collins v. Alco Parking Corp., 448 F.3d 652 (3d Cir. 2006), the district court gave the following instruction: "You are instructed that if plaintiff wins on his claim, he may be entitled to an award of attorney fees and costs over and above what you award as damages. It is my duty to decide whether to award attorney fees and costs, and if so, how much. Therefore, attorney fees and costs should play no part in your calculation of any damages."  Id. at 656-57.  The Court of Appeals held that the plaintiff had not properly objected to the instruction, and, reviewing for plain error, found none: "We need not and do not decide now whether a district court commits error by informing a jury about the availability of attorney fees in an ADEA case. Assuming arguendo that an error

occurred, such error is not plain, for two reasons." Id. at 657. First, "it is not 'obvious' or 'plain' that an instruction directing the jury not to consider attorney fees" is irrelevant or prejudicial; "it is at least arguable that a jury tasked with computing damages might, absent information that the Court has discretion to award attorney fees at a later stage, seek to compensate a sympathetic plaintiff for the expense of litigation." Id. Second, it is implausible "that the jury, in order to eliminate the chance that Collins might be awarded attorney fees, took the disproportionate step of returning a verdict against him even though it believed he was the victim of age discrimination, notwithstanding the District Court's clear instructions to the contrary." Id.; see also id. at 658 (distinguishing Fisher v. City of Memphis, 234 F.3d 312, 319 (6th Cir. 2000), and Brooks v. Cook, 938 F.2d 1048, 1051 (9th Cir. 1991)).

44

**3.8.1 Duty to Deliberate When Only the Plaintiff Claims Damages**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

45

**3.9 Election of Foreperson Explanation of Verdict Form[s]**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**ANNOTATIONS AND COMMENTS**

No annotations associated with this instruction.

46